IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-107-FL

| | |
|---|---|
| NEW DUNN HOTEL, LLC, and 510 ) | |
| SPRING BRANCH, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | ORDER |
| v. ) | |
| ) | |
| K2M DESIGN, LLC, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on defendant's partial motion to dismiss plaintiffs' complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (DE 11). The issues raised have been fully briefed, and in this posture are ripe for ruling. For the reasons that follow, defendant's motion is granted in part and denied in part.

**STATEMENT OF THE CASE**

This case concerns the numerous alleged failures of defendant, an architectural firm, to provide agreed upon design services to plaintiff 510 Spring Branch, LLC ("510"), the aspiring operator of a future hotel in Dunn, North Carolina, located on real property owned by plaintiff New Dunn Hotel, LLC ("NDH"). In this action removed from Harnett County Superior Court March 20, 2020, plaintiffs allege a total of 12 causes of action. Nine are grounded squarely on breach of the design services agreement between plaintiff 510 and defendant (claims one through five and seven through ten).[1] Two more implicate that agreement where plaintiffs allege breach

---

[1] Those alleged breaches of the design services agreement include: providing a defective architectural design,

of the North Carolina Architectural Code (claim six), constituting a breach of the agreement, and identified bad acts constituting a breach of a duty of good faith and fair dealing (claim 12). They also assert a negligence claim (claim 11).

Defendant seeks dismissal of all claims brought by plaintiff NDH on grounds plaintiff NDH was not party to any contract, together with its negligence claim, contending that cause of action is barred by the economic loss rule. Defendant seeks dismissal of plaintiff 510's negligence claim on similar grounds.

**STATEMENT OF FACTS**

The facts alleged in voluminous complaint[2] may be summarized as follows. On July 1, 2016, plaintiff NDH purchased real estate and a two-story, 80-unit building totaling approximately 54,000 square feet ("hotel") located at 510 Spring Branch in Dunn, North Carolina (collectively "property"). (Compl. ¶¶ 8–10, Ex. 1). On July 18, 2016, plaintiff 510 obtained brand approval requirements for a hotel franchised by Country Inns & Suites By Carlson, Inc. ("franchisor"), including architecture and design requirements. (Id. ¶¶ 11–13, Ex. 2). Plaintiffs were formally organized on August 15, 2016, with plaintiff NDH as the property owner and plaintiff 510 as the hotel operator.[3] (Id. ¶¶ 14–19, Ex. 3, Ex. 4).

On September 21, 2016, the franchisor revised its brand approval requirements to require submission of preliminary drawings and final plans containing sufficient details to enable the

---

designing defective structural systems, designing defective and code noncompliant electrical systems, designing defective and code noncompliant plumbing systems, providing a design that did not meet the requirements of the Americans with Disabilities Act, failing to meet the brand requirements for a Country Inn & Suites franchise, failing to provide a final and complete set of electronic design documents, causing a major design delay for the project, and failing to respond to requests for information and other administrative tasks.

[2]   Plaintiffs' complaint is 41 pages long and includes 44 attached exhibits.

[3]   Several months later, on December 10, 2016, plaintiff NDH and plaintiff 510 entered into a lease agreement, wherein plaintiff 510 agreed to pay plaintiff NDH $25,000.00 per month to lease the hotel. (Id. ¶¶ 37–38, Ex. 10).

franchisor's plan reviewer to determine compliance with all brand approval requirements. (Id. ¶¶ 20–22, Ex. 5). Shortly thereafter, on September 30, 2016, Kevin Coulter ("Coulter"), acting on behalf of defendant, expressed interest in serving as architect of record for the hotel development project. (Id. ¶¶ 23–25, Ex. 6).

On November 11, 2016, the franchisor and plaintiff 510 entered into a licensor-licensee agreement, requiring plaintiff 510 diligently to pursue the renovation according to specific time frames so that the hotel's opening occurred on or before June 1, 2017. (Id. ¶¶ 29–32, Ex. 8). A few days later, on November 16, 2016, plaintiff 510 entered into a design services agreement with defendant, in which defendant agreed to provide a final project design based upon the prototypes and compliant with brand approval requirements by January 2, 2017. (Id. ¶¶ 33–36, Ex. 9).

On December 29, 2016, and January 19, 2017, defendant furnished preliminary drawings and specifications for review. (Id. ¶¶ 39–40). The franchisor rejected defendant's preliminary design February 8, 2017, noting key differences between defendant's design plan and Country Inn & Suites architecture and design standards. (Id. ¶¶ 41–42, Ex. 11). Defendant furnished revised preliminary drawings and specifications on February 13, 2017, which seven days later, on February 20, 2017, the franchisor again rejected, explaining that, among other things, the drawings lacked responses to prior redlines, a site plan, notation of exterior signature colors and materials, or elevated public spaces. (Id. ¶¶ 43–45).

Several weeks later, on April 5 and 27, 2017, and on May 31, 2017, defendant furnished drawings and specifications for construction. (Id. ¶¶ 46–48). On June 2, 2017, the city of Dunn ("Dunn") denied plaintiff 510 a building permit because defendant's construction designs did not satisfy building permit requirements. (Id. ¶¶ 49–51, Ex. 13). Similarly, on June 23, 2017, the franchisor issued its review of the construction design, stating that it had conducted a second

3

preliminary review and found that the construction designs lacked information necessary to complete a comprehensive architectural and interior design review. (Id. ¶¶ 52–53, Ex. 14). On June 29, 2017, Dunn notified plaintiff 510 of its intention to consider an ordinance to demolish the existing structure at a city council meeting on July 11, 2017. (Id. ¶¶ 54–55, Ex. 15). The day after plaintiff received the Dunn's notification, defendant furnished comments in response to the city's permit review and denial. (Id. ¶ 56).

On October 13, 2017, plaintiff 510 and defendant amended their design services agreement to provide that "[a]ny code or city comments that need to be addressed on these plans will be covered within the basic design as it currently stands on these plans to achieve a permittable set of plans within the scope of the [design services agreement]" (Id. ¶¶ 59–61, Ex. 17). On October 16 and 26, 2017, defendant furnished incomplete, inaccurate, and noncompliant final drawings and specifications in response to the city's permit review. (Id. ¶¶ 62–63). Upon completing its architectural review, the franchisor rejected defendant's design as inconsistent with the brand standards on February 20, 2018. (Id. ¶¶ 66–67, Ex. 19). Approximately two months later, plaintiff 510 was notified on behalf of Dunn that the design produced by defendant failed to meet code requirements set forth by the city's public works department. (Id. ¶¶ 68–69, Ex. 20).

On April 16, 2018, plaintiff 510 and defendant again amended their design services agreement, providing that defendant would "incorporate all revision 3 comments (civil and architectural only) received via email on March 28, 2018. Radisson Hotels branding team reviewed the Design Professional's drawings dated 10/26/2017 for the Country Inn & Suites; Dunn, NC." (Id. ¶¶ 70–72, Ex. 21). However, on May 1, 2018, defendant issued plaintiff 510 a notice that Steven Grasley ("Grasley"), defendant's vice-president, had ordered defendant to stop work on plaintiff 510's project. (Id. ¶¶ 73–74, Ex. 22). On July 10, 2018, defendant transferred to plaintiff

4

510 the design documents. (Id. ¶¶ 75–76, Ex. 23).

On July 15, 2019, plaintiff 510 executed a contract with LMHT Associates to serve as completion architect of record, responsible for completion of defendant's final design. (Id. ¶¶ 83–84, Ex. 26). Plaintiff NDH has incurred or will incur a total of $905,025.99 in damages resulting from defendant's delays, and plaintiff 510 has incurred losses in the amount of $1,022,798.32 for the same. (Id. ¶¶ 88–90, Ex. 28). Additional facts pertinent to the instant motion will be discussed below.

## COURT'S DISCUSSION

A.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In reviewing a motion to dismiss under Rule 12(b)(6), the court "may consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Sec'y of State For Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007) (internal citations omitted).

B.  Analysis

1.  Plaintiff NDH's Breach of Contract Claims

Under North Carolina law, the "elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Crosby v. City of Gastonia, 635 F.3d 634, 645 (4th Cir. 2011) (quotations omitted). "The general rule is that one who is not a party to a contract may not maintain an action for its breach." Matternes v. City of Winston-Salem, 286 N.C. 1, 12 (1974). An exception to this rule "permits such an action to be maintained by a third party who is a beneficiary of the contract." Id.; see Raritan River Steel Co. v. Cherry, Bekaert & Holland, 329 N.C. 646, 650–51 (1991) (collecting cases).

Here, plaintiff NDH was not a party to defendant's design services agreement with plaintiff 510. (See Compl. ¶¶ 33, 286, Ex. 9). Furthermore, defendant and plaintiff 510's contract expressly agrees that "[n]othing in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party." (Compl. Ex. 9 at 123).[4] The complaint on its face indicates that plaintiff NDH is neither party to a contract between plaintiff 510 and defendant nor third party beneficiary to said contract. Plaintiff NDH, in responding to defendant's motion to dismiss, does not contend that its breach of contract claims should not be dismissed. Accordingly, as to plaintiff NDH, claims one through ten and 12 of the complaint are dismissed with prejudice.

2.  Economic Loss Rule

"North Carolina's economic loss rule provides that 'ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor.'" Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 164 (4th Cir. 2018) (quoting N. Carolina State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 81 (1978), rejected in part on other grounds, Trs. of Rowan

---

[4] Unless otherwise specified, the court uses page numbers assigned to the complaint and supporting exhibits by its case management and electronic filing system ("CM/ECF").

Tech. Coll. v. J. Hyatt Hammond Assocs., Inc., 313 N.C. 230 (1985)). "More specifically, it prohibits recovery for purely economic loss in tort when a contract, a warranty, or the UCC operates to allocate risk." Severn Peanut Co. v. Indus. Fumigant Co., 807 F.3d 88, 94 (4th Cir. 2015) (citation and quotations omitted). Under this rule, a "tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract." Legacy Data Access, 889 F.3d at 164 (quotations omitted). "It is the law of contract, not tort law, which defines the obligations and remedies of the parties in such a situation." Id. (quotations omitted).

"Accordingly, North Carolina law requires courts to limit plaintiffs' tort claims to only those claims which are identifiable and distinct from the primary breach of contract claim." Id. (quotations omitted) (quoting Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 346 (4th Cir. 1998)). "Only where a breach of contract also constitutes an 'independent tort' may tort actions be pursued." Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp., 15 F.3d 327, 330 (4th Cir. 1994). Furthermore, it is "unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." Id.; see N. Carolina State Ports Auth., 294 N.C. at 83 ("[O]ur research has brought to our attention no case in which this Court has held a tort action lies against a promisor for his simple failure to perform his contract, even though such failure was due to negligence or lack of skill.").

Here, plaintiffs allege that plaintiff 510 had a contract — its design services agreement — with defendant. (Compl. ¶¶ 33–36, 59–61, 70–72, Ex. 9, Ex. 17, Ex. 21). Defendant allegedly defaulted on its contractual obligations under the design services agreement. (See, e.g., Compl. ¶¶ 101–05, 122–23, 132–35, 148–50, 160–62, 171–74, 182, 186–87, 194, 200, 204–10, 214–15, 225–27, 231–37, 263–68). Concurrently, plaintiffs allege that defendant's breaches of contract are also

7

negligent acts. (See id. ¶¶ 271–82). Further, plaintiffs allege each of these tortious acts caused economic losses. (Id. ¶¶ 83, 89–90, 284).

      a.      Plaintiff NDH's Negligence Claim

Determining whether the economic loss rule applies to plaintiff NDH depends upon resolution of a threshold legal question: whether the economic loss rule bars negligence claims against those not in contractual privity, and if so, under what circumstances.

In certain cases, the economic loss rule bars negligence claims of parties not in contractual privity. For example, in N. Carolina State Ports Auth., the North Carolina Supreme Court applied the rule to a subcontractor sued by plaintiff for negligent installation of roofs, where such negligence claim was "simply an allegation that [the subcontractor] did not properly perform its contract with [the general contractor]." 294 N.C. at 87. In Beaufort Builders, Inc. v. White Plains Church Ministries, Inc., the North Carolina Court of Appeals applied the economic loss rule to bar a negligence claim of a party not in privity of contract where the defendant 1) was the president and co-owner of the contracting corporate party; 2) defendant's presence at the construction site in dispute was due to his company's performance of its contract with plaintiff, and 3) all of the acts he undertook while at the site were related to the corporate defendant's contractual obligation to construct a church for plaintiff. 246 N.C. App. 27, 37 (2016).

However, North Carolina courts have also been chary of applying the economic loss rule to nonparties to a contract. In Oates v. Jag, Inc., the North Carolina Supreme Court held that "an owner of a dwelling house who is not the original purchaser has a cause of action against the builder and general contractor for negligence in the construction of the house, when such negligence results in economic loss or damage to the owner." 314 N.C. 276, 277 (1985). Several North Carolina Court of Appeals cases have also held that "[b]ecause there was no contract

8

between [the parties], . . . the economic loss rule does not apply and therefore does not operate to bar [plaintiff's] negligence claims." Lord v. Customized Consulting Specialty, Inc., 182 N.C. App. 635, 643 (2007); Rountree v. Chowan Cty., 252 N.C. App. 155, 160 (2017); White v. Collins Bldg., Inc., 209 N.C. App. 48, 59 n.3 (2011); Hospira Inc. v. Alphagary Corp., 194 N.C. App. 695, 704–05 (2009).

"After parsing the cases mentioned above . . . we believe the relevant inquiry under North Carolina case law is whether the plaintiff 'ha[s] [a] basis for recovery in contract or warranty.'" Ellis v. Louisiana-Pac. Corp., 699 F.3d 778, 786 (4th Cir. 2012) (quoting Warfield v. Hicks, 91 N.C. App. 1, 10 (1988)). Where plaintiff NDH has no basis for recovery in contract or warranty, (see Compl. ¶¶ 33, 286, Ex. 9 at 123), the economic loss rule does not operate to bar plaintiff NDH's negligence claim against defendant.

The cases relied upon by defendant are not analogous to the instant dispute. In both N. Carolina State Ports Auth. and Beaufort Builders, Inc. v. White Plains Church Ministries, Inc., plaintiff had a basis for recovery in contract against one defendant and sought to recover in negligence against another defendant not party to the contract. In such cases, plaintiff had allocated the risk of loss for injuries touching upon the subject matter of the contract and defined its rights and remedies by way of contractual agreement. See N. Carolina State Ports Auth., 294 N.C. at 87; Beaufort Builders, 246 N.C. App. at 37.[5] Here, an additional plaintiff not privy to the design services agreement, plaintiff NDH, is claiming injury from defendant's conduct. Plaintiff NDH never made any contract with defendant or otherwise allocated risk of loss by contract.

---

[5] The same factor distinguishes this case from Crescent Univ. City Venture, LLC v. AP Atl., Inc., No. 15 CVS 14745, 2019 WL 3814999 (N.C. Super. Aug. 14, 2019), an unpublished opinion of the North Carolina business court, in which the court applied the economic loss doctrine to bar a claim brought by a plaintiff owner against a third-party manufacturer, where the plaintiff had separately exercised its "power in the bargaining process and its contractual remedy against" a general contractor defendant on the same construction project. Id. at * 16.

9

In Moore v. Coachmen Indus., Inc., the court found the economic loss rule barred plaintiff's negligence claims where the rights and remedies for breach of warranty governed plaintiff's claims against defendant manufacturer. 129 N.C. App. 389, 401–02 (1998). Although defendant cites Moore for the proposition that a defendant does not have to be in contractual privity for plaintiff's claim to be barred by the economic loss rule, breach of warranty claims sound in contract, thus triggering application of the rule. See id.; Ellis, 699 F.3d at 786.

In sum, plaintiff NDH's negligence claim may not be dismissed under the economic loss rule. In this part, defendant's partial motion to dismiss is denied.[6]

      b.      Plaintiff 510's Negligence Claim

Plaintiff 510's design services agreement provides a basis for recovery in contract against defendant. (See Compl. ¶¶ 33–36, 59–61, 70–72, Ex. 9, Ex. 17, Ex. 21). Therefore, plaintiff 510's negligence claim must be dismissed unless its negligence claim constitutes an independent tort.

In N. Carolina State Ports Auth., the North Carolina Supreme Court held that a property owner who contracted for construction of buildings was not entitled to recover in tort from the contractor who allegedly did not construct the roofs as agreed. 294 N.C. at 83; see also Spillman v. Am. Homes of Mocksville, Inc., 108 N.C. App. 63, 65 (1992) (applying the economic loss rule to similar facts). In Kaleel Builders, Inc. v. Ashby, the North Carolina Court of Appeals, citing N. Carolina State Ports Auth., explained that as between an architect in contractual privity with his client, "the contract governs, and we recognize no injuries sounding in tort." Kaleel Builders, Inc. v. Ashby, 161 N.C. App. 34, 42–44, 46 (2003). Plaintiff 510's negligence claim is analogous to the preceding cases.

---

[6] Where defendant's motion to dismiss is grounded upon the economic loss rule, the court leaves for a later date the separate question of what legal duty, if any, defendant owes plaintiff NDH. See Fussell v. N. Carolina Farm Bureau Mut. Ins. Co., 364 N.C. 222, 226 (2010).

10

Plaintiff 510 argues defendant is nonetheless liable to it for negligence because of defendant's professional duties as an architect under North Carolina law, attempting to invoke the public policy exception to the economic loss rule. See N. Carolina State Ports Auth., 294 N.C. at 82. The principal case on which plaintiff 510 relies held "that an architect in the absence of privity of contract may be sued by a general contractor or the subcontractors working on a construction project for economic loss foreseeably resulting from breach of an architect's common law duty of due care in the performance of his contract with the owner." Davidson & Jones, Inc. v. New Hanover Cty., 41 N.C. App. 661, 667 (1979) (emphasis added).

Plaintiff 510's argument is unpersuasive. In Davidson & Jones, the architect's negligence towards a general contractor or subcontractor was held identifiable and distinct from the contractual duties owed to the client, relying specifically upon the "working relationship" and "community of interests" between the architect and the contractor to impose a duty of due care under the law. 41 N.C. App. at 667; see Pompano Masonry Corp. v. HDR Architecture, Inc., 165 N.C. App. 401, 408 (2004); Shoffner Indus., Inc. v. W. B. Lloyd Const. Co., 42 N.C. App. 259, 271–72 (1979). Unlike the duty owed to a general contractor or subcontractor, defendant's "working relationship" and "community of interests" with plaintiff 510 is not distinct from the design services agreement. See Severn Peanut, 807 F.3d at 94; Kaleel Builders, 161 N.C. App. at 42–44, 46; (Compl. ¶ 272; Ex. 9 at 122–23 (allocating risk and limiting defendant's liability for consequential damages)). Plaintiff 510's negligence claim against defendant is dismissed with prejudice.

**CONCLUSION**

Based on the foregoing, defendant's partial motion to dismiss (DE 11) is GRANTED IN PART and DENIED IN PART. As to plaintiff NDH, claims one through ten and 12 of the

11

complaint are DISMISSED WITH PREJUDICE, and claim 11 is allowed to proceed. As to plaintiff 510, claim 11 is DISMISSED WITH PREJUDICE.

SO ORDERED, this the 21st day of May, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge