IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-107-FL

| | |
|---|---|
| NEW DUNN HOTEL, LLC; 510 SPRING BRANCH, LLC; and WHITTENTON BUILDERS ENTERPRISES, INC., | ) ) ) ) |
| Plaintiffs, | ) ) ORDER |
| v. | ) ) |
| K2M DESIGN, INC., | ) ) |
| Defendant. | ) ) |
| K2M DESIGN, INC., | ) ) |
| Third-Party Plaintiff, | ) ) |
| v. | ) ) |
| WAVE ENGINEERING, PLLC, | ) ) |
| Third-Party Defendant.[1] | ) ) |

This matter is before the court on plaintiffs' motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (DE 47). Also before the court is defendant's motion for reconsideration (DE 61) of the court's May 21, 2020, order, granting in

---

[1] The court constructively amends the caption of this order to reflect joinder of Whittenton Builders Enterprises, Inc. as a plaintiff on August 12, 2020, and filing of third-party complaint against Wave Engineering, PLLC, on August 19, 2020.

part and denying in part defendant's motion to dismiss. The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, the motions are denied.

## BACKGROUND

This case arises out of a dispute concerning a hotel renovation project ("the Project") between defendant, an architectural firm, and plaintiffs New Dunn Hotel, LLC ("NDH"), owner of the hotel property; 510 Spring Branch, LLC ("510"), operator and lessee of a building located on the hotel property; and plaintiff Whittenton Builders Enterprises, Inc. ("Whittenton"), the general contractor of the Project. Plaintiffs NDH and 510 commenced this action on February 7, 2020, asserting various breach of contract claims, as well as claims for negligence and breach of the duty of good faith and fair dealing.

Following removal from Harnett County Superior Court, and upon motion of defendant, the court dismissed with prejudice plaintiff 510's negligence claim, and dismissed with prejudice all of plaintiff NDH's claims, except its negligence claim, finding that it was not barred by the economic loss rule. Shortly thereafter, plaintiffs filed the operative amended complaint, joining Whittenton as a plaintiff and asserting a negligence claim on its behalf. In the meantime, the court entered case management order, with a deadline, now extended, for discovery to conclude by July 28, 2021, and dispositive motions due August 27, 2021.[2]

On August 26, 2020, defendant answered the amended complaint and asserted a counterclaim against plaintiff 510, alleging breach of an April 16, 2018, design services agreement. Plaintiffs answered defendant's counterclaim on September 2, 2020, attaching email correspondence.[3] Approximately one week later, plaintiffs filed the instant motion for judgment

---

[2] On August 19, 2020, defendant filed third-party complaint against Wave Engineering, PLLC, asserting a claim for indemnification based upon an alleged subcontractor agreement between the two parties.

[3] Although defendant asserts the counterclaim against plaintiff 510 alone, plaintiffs designate the answer to

on the pleadings with respect to defendant's counterclaim. Defendant responded in opposition on September 29, 2020.

On March 14, 2021, defendant filed the instant motion for reconsideration of the court's May 21, 2020, order, granting in part and denying in part defendant's motion to dismiss. In particular, defendant seeks reconsideration of that part of the court's order finding that the economic loss rule did not bar plaintiff NDH's negligence claim. Plaintiffs responded in opposition on April 1, 2021, and defendant replied on April 3, 2021.

### STATEMENT OF FACTS

The court summarizes, in turn below, the facts alleged in plaintiffs' complaint, as relevant to defendant's motion for reconsideration, and the facts alleged in defendant's counterclaim, as relevant to plaintiff's motion for judgment on the pleadings.

A.  Complaint

The court incorporates herein the summary of the alleged facts in the complaint, as set forth in its May 21, 2020, order, for ease of reference:

> The facts alleged in voluminous complaint[2] may be summarized as follows. On July 1, 2016, plaintiff NDH purchased real estate and a two-story, 80-unit building totaling approximately 54,000 square feet ("hotel") located at 510 Spring Branch in Dunn, North Carolina (collectively "property"). (Compl. ¶¶ 8–10, Ex. 1). On July 18, 2016, plaintiff 510 obtained brand approval requirements for a hotel franchised by Country Inns & Suites By Carlson, Inc. ("franchisor"), including architecture and design requirements. (Id. ¶¶ 11–13, Ex. 2). Plaintiffs were formally organized on August 15, 2016, with plaintiff NDH as the property owner and plaintiff 510 as the hotel operator. (Id. ¶¶ 14–19, Ex. 3, Ex. 4).
>
> On September 21, 2016, the franchisor revised its brand approval requirements to require submission of preliminary drawings and final plans containing sufficient details to enable the franchisor's plan reviewer to determine compliance with all brand approval requirements. (Id. ¶¶ 20–22, Ex. 5). Shortly thereafter, on September 30, 2016, Kevin Coulter ("Coulter"), acting on behalf of defendant, expressed interest in serving as architect of record for the hotel development project. (Id. ¶¶ 23–25, Ex. 6).

---

the counterclaim, as well as the motion for judgment on the pleadings, as being filed by all plaintiffs.

3

On November 11, 2016, the franchisor and plaintiff 510 entered into a licensor-licensee agreement, requiring plaintiff 510 diligently to pursue the renovation according to specific time frames so that the hotel's opening occurred on or before June 1, 2017. (Id. ¶¶ 29–32, Ex. 8). A few days later, on November 16, 2016, plaintiff 510 entered into a design services agreement with defendant, in which defendant agreed to provide a final project design based upon the prototypes and compliant with brand approval requirements by January 2, 2017. (Id. ¶¶ 33–36, Ex. 9).

On December 29, 2016, and January 19, 2017, defendant furnished preliminary drawings and specifications for review. (Id. ¶¶ 39–40). The franchisor rejected defendant's preliminary design February 8, 2017, noting key differences between defendant's design plan and Country Inn & Suites architecture and design standards. (Id. ¶¶ 41–42, Ex. 11). Defendant furnished revised preliminary drawings and specifications on February 13, 2017, which seven days later, on February 20, 2017, the franchisor again rejected, explaining that, among other things, the drawings lacked responses to prior redlines, a site plan, notation of exterior signature colors and materials, or elevated public spaces. (Id. ¶¶ 43–45).

Several weeks later, on April 5 and 27, 2017, and on May 31, 2017, defendant furnished drawings and specifications for construction. (Id. ¶¶ 46–48). On June 2, 2017, the city of Dunn ("Dunn") denied plaintiff 510 a building permit because defendant's construction designs did not satisfy building permit requirements. (Id. ¶¶ 49–51, Ex. 13). Similarly, on June 23, 2017, the franchisor issued its review of the construction design, stating that it had conducted a second preliminary review and found that the construction designs lacked information necessary to complete a comprehensive architectural and interior design review. (Id. ¶¶ 52–53, Ex. 14). On June 29, 2017, Dunn notified plaintiff 510 of its intention to consider an ordinance to demolish the existing structure at a city council meeting on July 11, 2017. (Id. ¶¶ 54–55, Ex. 15). The day after plaintiff received the Dunn's notification, defendant furnished comments in response to the city's permit review and denial. (Id. ¶ 56).

On October 13, 2017, plaintiff 510 and defendant amended their design services agreement to provide that "[a]ny code or city comments that need to be addressed on these plans will be covered within the basic design as it currently stands on these plans to achieve a permittable set of plans within the scope of the [design services agreement]" (Id. ¶¶ 59–61, Ex. 17). On October 16 and 26, 2017, defendant furnished incomplete, inaccurate, and noncompliant final drawings and specifications in response to the city's permit review. (Id. ¶¶ 62–63). Upon completing its architectural review, the franchisor rejected defendant's design as inconsistent with the brand standards on February 20, 2018. (Id. ¶¶ 66–67, Ex. 19). Approximately two months later, plaintiff 510 was notified on behalf of Dunn that the design produced by defendant failed to meet code requirements set forth by the city's public works department. (Id. ¶¶ 68–69, Ex. 20).

On April 16, 2018, plaintiff 510 and defendant again amended their design services agreement, providing that defendant would "incorporate all revision 3 comments (civil and architectural only) received via email on March 28, 2018. Radisson Hotels branding team reviewed the Design Professional's drawings dated 10/26/2017 for the Country Inn & Suites; Dunn, NC." (Id. ¶¶ 70–72, Ex. 21). However, on May 1, 2018, defendant issued plaintiff 510 a notice that Steven Grasley ("Grasley"), defendant's vice-president, had ordered defendant to stop work on plaintiff 510's project. (Id. ¶¶ 73–74, Ex. 22). On July 10, 2018, defendant transferred to plaintiff 510 the design documents. (Id. ¶¶ 75–76, Ex. 23).

On July 15, 2019, plaintiff 510 executed a contract with LMHT Associates to serve as completion architect of record, responsible for completion of defendant's final design. (Id. ¶¶ 83–84, Ex. 26). Plaintiff NDH has incurred or will incur a total of $905,025.99 in damages resulting from defendant's delays, and plaintiff 510 has incurred losses in the amount of $1,022,798.32 for the same. (Id. ¶¶ 88–90, Ex. 28).

New Dunn Hotel, LLC v. K2M Design, LLC, No. 5:20-CV-107-FL, 2020 WL 2575562, at *1–3 (E.D.N.C. May 21, 2020).

B. Counterclaim

On April 16, 2018, defendant and plaintiff 510 entered into a design services agreement ("April 16 Design Contract"), under which defendant agreed to provide "certain limited design services" for the Project in exchange for payment by plaintiff 510 for the same. (Counterclaim (DE 34) ¶¶ 1-2). Pursuant to the parties' agreement, plaintiff 510's payment obligations included a deposit of $2,692.00, to be paid at the start of the April 16 Design Contract. (Id. ¶ 4). Defendant allegedly began providing services to plaintiff 510 under the April 16 Design Contract, and invoiced plaintiff 510 for those services. (Id. ¶ 5). However, plaintiff 510 allegedly has failed to pay defendant for any work it performed. (Id. ¶¶ 7-8).

5

## COURT'S DISCUSSION

A.   Motion for Reconsideration

   1.   Standard of Review

Pursuant to Federal Rule of Civil Procedure 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Compared to post-judgment Rule 59(e) motions, Rule 54(b) gives district courts "broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." Carlson v. Boston Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017). The discretion provided by Rule 54(b), however, "is not limitless." Id. The court may revise an interlocutory order only in the following circumstances: (1) a subsequent trial produces substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice. Id.; see also Am. Canoe Ass' n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003).

   2.   Analysis

Defendant seeks reconsideration of that part of the court's May 21, 2020, order, finding that the economic loss rule does not bar plaintiff NDH's negligence claim.

"North Carolina's economic loss rule provides that 'ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor.'" Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 164 (4th Cir. 2018) (quoting N. Carolina State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 81 (1978), rejected in part on other grounds, Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc., 313 N.C. 230 (1985)). "More specifically, it

prohibits recovery for purely economic loss in tort when a contract, a warranty, or the UCC operates to allocate risk." Severn Peanut Co. v. Indus. Fumigant Co., 807 F.3d 88, 94 (4th Cir. 2015) (citation and quotations omitted).

Under this rule, a "tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract." Legacy Data Access, 889 F.3d at 164 (quotations omitted). "It is the law of contract, not tort law, which defines the obligations and remedies of the parties in such a situation." Id. (quotations omitted). Accordingly, in determining whether the economic loss rule bars a plaintiff's negligence claim, the relevant inquiry under North Carolina case law is whether the plaintiff 'ha[s] [a] basis for recovery in contract or warranty.'" Ellis v. Louisiana-Pac. Corp., 699 F.3d 778, 786 (4th Cir. 2012) (quoting Warfield v. Hicks, 91 N.C. App. 1, 10 (1988)).

Here, plaintiffs allege that plaintiff 510 entered into a contract with defendant, (see Compl. ¶¶ 33–36, 59–61, 70–72, Ex. 9, Ex. 17, Ex. 21), and that defendant defaulted on its obligations under the contract. (See, e.g., Compl. ¶¶ 101–05, 122–23, 132–35, 148–50, 160–62, 171–74, 182, 186–87, 194, 200, 204–10, 214–15, 225–27, 231–37, 263–68). Concurrently, plaintiffs allege that defendant's breaches of contract are also negligent acts that caused plaintiff NDH economic losses. (Id. ¶¶ 83, 89–90, 271–82, 284). Plaintiff NDH was not a party to defendant's contract with plaintiff 510, and it has no basis for recovery in contract or warranty. (See Compl. ¶¶ 33, 286, Ex. 9 at 123). As a result, the economic loss rule does not operate to bar plaintiff NDH's negligence claim against defendant.

Defendant argues, however, that the North Carolina Supreme Court's decision in Crescent Univ. City Venture, LLC v. Trussway Mfg., Inc., 376 N.C. 54, 60 (2020) compels a different result. In Crescent, the court held that the economic loss rule barred a commercial property

owner's negligence claim against a manufacturer, with whom the commercial property owner lacked contractual privity. 376 N.C. at 62-63. Consistent with court's initial analysis,[4] <u>Crescent</u> is distinguishable from the instant matter in a key respect. In <u>Crescent</u>, the commercial property owner "possess[ed] a bargained-for means of recovery" in contract against a general contractor, for the exact harm underlying its negligence claim against the manufacturer. <u>Id.</u> at 55. As the court explained, in negotiating its contract with general contractor, the commercial property owner had "the full knowledge of and power to control the acquisition and engagement of" manufacturers. <u>Id.</u> As a result, the court held that the commercial property owner must "look toward the breach of its contractual relationship with its supplier or general contractor to recover [it's] purely economic losses." <u>Id.</u> at 62.

Here, in contrast, plaintiff NDH never made any contract with defendant or otherwise allocated risk of loss by contract. Thus, unlike the commercial property owner in <u>Crescent</u>, plaintiff NDH lacks a "basis for recovery in contract or warranty", rendering the economic loss rule inapplicable to its negligence claim. <u>Ellis</u>, 699 F.3d at 786. Defendant argues that the Fourth Circuit's decision in <u>Ellis</u> is no longer viable in light of <u>Crescent</u>. However, the court in <u>Crescent</u> applied the economic loss rule to a plaintiff who had a basis for recovery in contract; therefore, <u>Crescent</u> is in accord with the Fourth Circuit's conclusion that "the relevant inquiry under North Carolina case law is whether the plaintiff 'ha[s] [a] basis for recovery in contract or warranty.'" <u>Ellis</u>, 699 F.3d at 786.

Finally, defendant suggests that <u>Crescent</u> mandates application of the economic loss rule

---

[4] The court previously distinguished <u>Crescent Univ. City Venture, LLC v. AP Atl., Inc.</u>, No. 15 CVS 14745, 2019 WL 3814999 (N.C. Super. Aug. 14, 2019) from the instant matter. <u>See</u> <u>New Dunn Hotel</u>, 2020 WL 2575562, at *5 n.5 ("The same factor distinguishes this case from <u>Crescent Univ. City Venture, LLC v. AP Atl., Inc.</u>, No. 15 CVS 14745, 2019 WL 3814999 (N.C. Super. Aug. 14, 2019), an unpublished opinion of the North Carolina business court, in which the court applied the economic loss doctrine to bar a claim brought by a plaintiff owner against a third-party manufacturer, where the plaintiff had separately exercised its 'power in the bargaining process and its contractual remedy against' a general contractor defendant on the same construction project.").

in the commercial context; yet, the court's holding in Crescent is significantly narrower than defendant contends and limited by facts not present here. See Crescent, 376 N.C. at 60 ("To the extent that such cases as Lord spawn an argument against the application of the economic loss rule in commercial cases where a sophisticated commercial developer attempts to recover in tort against a subcontractor <u>when the injury complained of concerns solely the subject matter of a valid contract between the developer and the general contractor, as is the case here</u>, such an argument is unpersuasive.") (emphasis added).

For all these reasons, defendant's motion for reconsideration is denied.

B.  Motion for Judgment on the Pleadings

1.  Standard of Review

"After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In reviewing a motion for judgment on the pleadings, the court "appl[ies] the same standard as a 12(b)(6) motion to dismiss." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012). "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations

omitted).

2. Analysis

Plaintiff moves for judgment on the pleadings on defendant's counterclaim for breach of the April 16 Design Contract. "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of [the] contract." Wells Fargo Ins. Serv. USA, Inc. v. Link, 372 N.C. 260, 276 (2019). Under the first element, a valid contract requires assent, mutuality, and definite terms. See Horton v. Humble Oil & Refining Co., 255 N.C. 675, 679 (1961). Moreover, mutuality, or "[m]utuality of promises means that promises, to be enforceable, must each impose a legal liability upon the promisor. Each promise then becomes a consideration for the other." Wellington-Sears & Co. v. Dize Awning & Tent Co., 196 N.C. 748, 751 (1929). Under the second element, failure to comply with duties imposed by contract terms constitutes breach. See Sale v. State Highway Comm' n, 242 N.C. 612, 619 (1955).

Here, defendant alleges that it entered into the April 16 Design Contract with plaintiff 510, under which the parties agreed that defendant would provide design services for the Project in exchange for payment by plaintiff 510. (Counterclaim (DE 34) ¶¶ 2-4). Moreover, defendant alleges that plaintiff 510 breached the April 16 Design Contract, by failing to pay defendant for the services it provided thereunder. (Id. ¶¶ 6-8). Accordingly, defendant sufficiently states a claim for breach of the April 16 Design Contract, based upon plaintiff 510's alleged failure to make payment.

Plaintiff 510 argues that it made a payment under the April 16 Design Contract and that defendant failed to provide any of the services required by the April 16 Design Contract, relying upon allegations in its amended complaint, that defendant does not admit in its answer, as well as documents attached to plaintiff 510's answer to defendant's counterclaim, specifically an email

written by Rod Ququa ("Ququa"), defendant's senior project manager, dated May 1, 2018, and an email chain between Jenna Kutsar, defendant's accounts receivable specialist, and Ququa, dated June 28, 2018 (hereinafter, the "2018 emails" ). (See Answer, Ex. 1 (DE 46-1); Answer, Ex. 2 (DE 46-2)). Plaintiff 510 contends the court can consider the 2018 emails upon its motion for judgment on the pleadings, and that the 2018 emails demonstrate that plaintiff 510 is entitled to judgment as a matter of law on defendant's counterclaim.

Under the circumstances of this case, consideration of the contents of the 2018 emails, particularly for the truth of the matters asserted therein, is improper upon a motion for judgment on the pleadings. Although the United States Court of Appeals for the Fourth Circuit has not addressed this issue in a published opinion, district courts within this circuit have stated that upon review of a Rule 12(c) motion, the court may consider all pleadings, including answers and attached exhibits, in addition to the complaint. See, e.g., Seneca Ins. Co. v. Shipping Boxes I, LLC, 30 F. Supp. 3d 506, 510 (E.D. Va. 2014); Mendenhall v. Hanesbrands, Inc., 856 F.Supp.2d 717, 724 (M.D.N.C. 2012).

Nevertheless, the court must adhere to the rule that "[a] Rule 12(c) motion tests only the sufficiency of the [counterclaim] and does not resolve . . . any disputes of fact." Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014). Thus, the court must "assume the facts alleged in the [counterclaim] are true and draw all reasonable factual inferences in [the defendant's] favor." Burbach Broad. Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). Likewise, consideration of a document outside of the counterclaim relied upon by a plaintiff in support of dismissal under Rule 12 "ordinarily is permitted only when the document is integral to and explicitly relied on in the [counterclaim], and when the [defendant] do[es] not challenge the document's authenticity." Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606-07 (4th Cir.

11

2015).

Here, while defendant does not raise an issue with the authenticity of the 2018 emails, they are neither integral to nor explicitly relied upon in the counterclaim. Indeed, the counterclaim does not reference the 2018 emails and it does not rely upon the contents of the 2018 emails to state a claim for breach of contract. (See, e.g., Counterclaim ¶¶ 1-15). As such, consideration of the 2018 emails for purposes of the instant motion is improper.

Therefore, plaintiff's motion for judgment on the pleadings is denied.

## CONCLUSION

Based on the foregoing, plaintiffs' motion for judgment on the pleadings (DE 47) is DENIED and defendant's motion for reconsideration (DE 61) is DENIED. On its own initiative, the court EXTENDS the fact discovery deadline to June 28, 2021. All other terms and conditions in the court's May 6, 2020, case management order, as amended August 12, 2020, and January 11, 2021, shall remain in full force and effect.

SO ORDERED, this the 12th day of May, 2021.

                                              LOUISE W. FLANAGAN
                                              United States District Judge